UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-20802-CR-LENARD

UNITED STATES OF AMERICA,

    Plaintiff,
vs.

LOUIS PARGIOLAS,

    Defendant.
_____/

**LOUIS PARGIOLAS'S SENTENCING MEMORANDUM
&
OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

MARKUS & MARKUS PLLC • 40 N.W. THIRD STREET • PENTHOUSE ONE • MIAMI, FLORIDA  33128

## INTRODUCTION

At the time of the offense, back in 2002, Lou Pargiolas was a young man with no family. His life has completely changed for the better since then. He is now married with children and is a responsible, hard working member or society. Although this was a very defensible case on both the law and the facts, Lou pled guilty and accepts full responsibility for his actions. Lou recognizes that he engaged in this reckless, criminal act. This difficult issue for the Court in this case is: what sentence is sufficient, but not greater than necessary for this changed man?

Through this sentencing memorandum, we are respectfully requesting a significant variance. Based upon various arguments we have in support of a variance (the parties agree that at the low end, the guidelines are 63 months), we believe that the Court can fashion a sentence lower than the guidelines that is "sufficient but not greater than necessary" to achieve the goals of sentencing in this case. We will summarize here a number of important factors that support a significant downward variance:

1.      **The History and Characteristics of Mr. Pargiolas –** Lou Pargiolas is a family man. His life has changed significantly and  for the better since this offense occurred more than eight years ago. We have witnesses and have submitted letters from Lou's friends and family, which demonstrate that Lou Pargiolas is a different and better person.

2. **Change in Circumstances, Rehabilitation & Risk of Re-Offending** – Lou's decision to become involved with this offense was an aberrant act in his life. It was a foolish decision he made when he was single and had no family of his own. Lou has fundamentally changed since the offense. The changes in his life were a result of maturity, marriage, having children and of self-evaluation. These changes occurred long before Lou had any idea he would be indicted, arrested or would face prison, making his rehabilitation extraordinary.

At sentencing, we would like to call Dr. Merry Haber as a witness. Dr. Haber will explain that Lou will not recidivate as he has an extremely high support system and other positive indicators.

3. **Employment History –** Lou is gainfully employed as a successful options trader. His employer, Dr. Glen Caddy, believes that Lou is irreplaceable, good at what he does and is an asset to his firm. Lou is a productive member of society and can continue to be.

## LAW

As the Court is well-aware, district courts are now free from the mandatory nature of the Federal Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220 (2005); *Spears v. United States*, 129 S.Ct. 840 (2009). *See also United States v. Ranum*, 353 F. Supp 2d 984 (E.D. Wis. 2005) (Adelman, J.) (holding that "*Booker* was not an invitation to do business as usual"). In fact, the guidelines are not even presumptively reasonable: "the guidelines are

not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States,* 129 S.Ct. 890 (2009); *United States v. Agbai*, 497 F.3d 1226 (11th Cir. 2007) (trial courts are not permitted to presume that a guideline sentence is reasonable). Court's are free to depart from the guidelines based solely upon disagreement with the guidelines so long as the court states its disagreement along with sufficient justifications for the extent of any departure. *See United States v. Parris,* 573 F.Supp.2d 744, 754-755 (E.D.N.Y. 2008) *citing United States v. Cutler,* 520 F.3d 136 (2d Cir. 2008) and *United States v. Gall*, 128 S.Ct. 586 (2007) (departing from 360 months to 60 months (84.5 %) considering the defendant's personal history and characteristics, finding that a "one-size-fits-all" approach to sentencing was not appropriate).

In particular, the Eleventh Circuit repeatedly has affirmed below guideline sentences after *Booker*. *United States v. Clay*, 483 F.3d 739 (11th Cir. 2007) (affirming 60 month sentence even though guidelines were 188-235 months based on post-offense rehabilitation)*; United States v. Mathis,* 186 F. App'x 971 (11th Cir. 2006) (50% variance from top end of guidelines affirmed in Hobbs Act extortion and obstruction of justice case); *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006) (affirming 72 month sentence even though low end of guidelines were 151 months, more than double sentence imposed); *United States v. Halsema*, 180 F. App'x 103 (11th Cir. 2006) (unpublished) (affirming 24 months sentence even though guidelines were 57-71 months); *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006) (90

months' imprisonment was sufficient, but not greater than necessary to punish, deter, and rehabilitate defendant even though low end of guidelines was 188 months). And, of course, this Court must also consider all of the factors set forth in 18 U.S.C. §3553(a).

**REASONS TO GIVE A DOWNWARD VARIANCE
APPLICABLE SECTION 3553 FACTORS**

- **The Nature of the Offense & Louis Pargiolas's History and Family Circumstances**

The parties agree that Lou's role in the offense was minor. Lou was merely a one-time passive investor. Lou was never privy to the details of transactions or shipments, nor was Lou considered part of Afanador's organization. Lou was not involved in the decision making process, the negotiation of prices or quantities, nor was Lou privy to the inner workings of Afanador's organization. His involvement with Afanador's organization was short and limited.

When this offense occurred, Lou was not married and had no children. At that time, he was admittedly selfish and reckless. Now, over eight years later, Lou's priorities have changed. Lou Pargiolas is a husband and father to two young children, Isabella who is 7 years old, and Salvatore, "Sammy" who is 3 years old. (Pictured below, with his wife Marcela).



They are a close-knit family where spending time together is their top priority. This Court will see a short DVD that captures just a glimpse of Lou's life. Attached (as Exhibit 1 & 2), are numerous letters in support of Mr. Pargiolas. As the Court will see, there is more to Louis Pargiolas than the PSI could possible cover:

- "Lou has stayed a good friend, became a great father and husband and well respected businessman...Lou is a very caring and giving person and exemplifies the meaning of giving back." – George Gershon, friend of 25 years.

- "My opinion of Louis Pargiolas: A very loving, caring, considerate family man. A person who puts others first before himself." – Andrew DiPonio, friend.

- "When a long time friend that Louis grew up with in Chicago was shot and killed in the line of duty on the Chicago Police Department, Michael Anthony Ceriale (Badge #17429) Louis was an integral part in organizing a charity function to help the fallen officer's family, and every year there is still a charity softball tournament in honor of Michael Ceriale."  – Benjamin DiPonio, brother-in-law.

- "Lou is took care of us for many years. He always made sure we had everything. I could always count on him to help us. Louis is a very caring individual and will

help anyone in need." – Bertha Pargiolas, step-mother.

- "He is the greatest mentor I have ever had. He is, without fail, completely honest and conscientious in everything he does or is involved with. Whenever Lou has promised something to me or others, he has always delivered. He is always on time, and whenever work has becoming exceptionally demanding – he always carried his share of the burden." – Jeremy Salsburg, co-worker.

- "Lou is a terrific father. I have seen first hand his relationship with his children Isabella and Sammy. Their eyes light up whenever their daddy is around. Lou does everything with his wife and kids. His life revolves around them. He is definitely a hands on father. " – Jennifer Martinez, friend.

- "Lou is a very generous thoughtful person with a big heart. I have had the honor to grow up with Lou and be actively involved in his family. Lou will always have a place in my heart for all the good deeds he has done for me and my family." – Mark Martinez, friend.

- "Lou is a dedicated family man, a loyal and trusted friend and the most talented trader that I have met in my entire career. He has touched me and my family's life in an amazing way and I am grateful that our paths have crossed." – Scott Manganelli, co-worker and friend.

- "It has been my privilege to know and helped guide Lou Pargiolas since he was a boy approximately six years of age. I can only attest to the fact that Lou Pargiolas has, without exception, conducted himself honestly, applied himself intelligently, and worked very very hard. I've has the experience and honor of working with the finest engineers, architects and real estate developers over forty five years, and I would trust and work with Lou as their peer." – Myron Oppenheim, family friend.

- "The Lou Pargiolas that I have known for roughly five (5) years is worthy of your additional time, consideration and leniency. Any consideration that you afford to Lou would not be wasted or unappreciated. Rather, it would be embraced and valued as the foundation for Lou and his family to rebuild their lives." –Nelson Migdal, lawyer & friend.

- 'Lou has helped me through some tough times in my life. He is a genuine good

  person, a great husband, loving father and a brother to me. He is also a positive influence in other kids' lives." – Michael Martinez, friend.

▸ He is a very kind and caring person. He is a wonderful brother, father and husband and cares deeply about our family." – Julie DiPonio, sister.

• **Changed Circumstances & Rehabilitation**

This case occurred more than eight years ago. When Lou became involved with Mr. Afanador, he was a single young man, with no family. His life has changed dramatically, for the better, as a result of the choices he has made, long before he was indicted and arrested.

The Eleventh Circuit has recognized that post-offense rehabilitation is a legitimate and reasonable reason to grant a downward variance.

In *United States v. Clay,* 483 F.3d, 739, 745 (11th Cir. 2007), the court wrote:

> One of the purposes of our sentencing system is to impose "the punishment that most effectively lessens the likelihood of future crime, either by deterring others or incapacitating the defendant." U.S.S.G. ch. 1, pt. A, introductory cmt. 3. Both the Guidelines calculations and the sentencing factors of section 3553(a) require a judge to consider characteristics of the defendant and the offense that make it more or less likely that the defendant will reoffend.

In *Clay* the Eleventh Circuit approved the downward variance for post-offense rehabilitation because it reflected that:

> unlike some other defendants, Clay has fundamentally changed since his offense, poses a lesser risk to the community,

> and does not require incapacitation for too long. That the changes in Clay's life occurred before Clay had any inkling that he would face a prison sentence further evidences that the measure of his rehabilitation was extraordinary.

*Id*. at 739. The justifications for a downward variance here are strikingly similar to that in *Clay*. Like the defendant in *Clay*, Lou has fundamentally changed since the offense, poses no risk to the community to re-offend (addressed in more detail below), and his life changes occurred well before he was indicted or anticipated a prison sentence. *See also, Gall v. United States,* 128 S.Ct. 586, 601-602 (2007); *United States v. Polendo-Diaz*, 2008 WL 2367243 (D.N.M. 2008) (district court granted substantial downward variance – 18 months from 41-51 month range – when considering the passage of time in between violence offense increasing guidelines and sentencing along with the defendants low risk of recidivism); *United States v. Halaska*, 2009 WL 1090701 (S.D.Ill., 2009) (granting a 51 month downward departure for post-offense rehabilitation prior to indictment); *United States v. Cherry,* 487 F.3d 366, 369-70 (6th Cir. 2007) (granting 43% downward variance from the guideline range where the defendant presented a low risk to reoffend).

One of the aims of incarceration is rehabilitation, but here, rehabilitation has already occurred. The changes in Lou's life did not occur post-indictment or as a result of this case or the prospect of incarceration. (Lou was indicted on August 25, 2008 and arrested on April 8, 2009). In 2005, Lou began volunteering with the American Society of Bogota. The

American Society provides scholarships to underprivileged Colombian children. Eventually, Lou served as the treasurer and vice-president until 2009, when Lou moved permanently back to the United States. During that time, Lou worked closely with the U.S. Embassy to organize the scholarship fundraisers. The changes to Lou's life occurred because he matured, sought counseling, started a family and re-evaluated his life on his own. On December 7, 2007, before he was even charged, Lou wrote and email to his sister Julie. This heartfelt email lays out the changes in Lou's life and the changes in his prospective on life. In that email Lou wrote:

> I am just writing as I think and what I feel but I think I figured out the panic attacks, they were getting me ready for a life changing experience. In my 36 years of life, I can truly say that I am happy, I love my wife, I love my children and I love my family....Let me tell you the minute that little guy was born I fell instantly in love, a feeling I don't think I can ever explain and the only thing I could thing and feel at that moment is I will never leave him, Marcela or Isa. It is the craziest bond you can ever feel. I was all alone in Chicago all weekend and thought about everything that happened in our lives, the good and the bad as well, I laughed and cried.

(The full email is attached as part of the letter written by Louis' sister Julie DiPonio).

The proof of Lou's pre-indictment, post-offense rehabilitation goes beyond his own words. Specifically, at the pre-trial detention hearing, the case agent explained that Lou Pargiolas had been under surveillance and investigated for the past six to seven years, his financial records were subpoenaed, his trash pulled and there was no evidence that he had

engaged in any other criminal activity before or after this case. (PTD Hearing Transcript, Pgs. 15-16).

Lou's post-offense rehabilitation alone is reason enough for a downward variance. Yet, there is more.

- **Louis Pargiolas's low likelihood of recidivism.**

He is a first-time non-violent offender, who is married with children. He is educated and can work. The Sentencing Commission's reports on who recidivates puts Mr. Pargiolas in the lowest risk factor, with almost no chance of committing future crimes. *See, The Criminal History Computation of the Federal Sentencing Guidelines, Recidivism and the "First Offender,"* and *U.S. Parole Commission Salient Factor Score,* all found at www.ussc.gov/research.html. Specifically, these reports show that:

▸ Recidivism rates decrease with age and educational level. *Criminal History Computation*, at 12-13 & Exhibits 9 & 10

▸ Stable employment, marriage and children are all associated with lower recidivism; *Id*. at 12 & Exhibit 10.

▸ Defendants are more likely to recidivate when sentenced to straight prison, as opposed to probation or split sentences. *Id*. at 13 & exhibit 12.

In addition, Dr. Merry Haber, who will address this Court at sentencing, found:

> Mr. Pargiolas's behavior was aberrant in terms of his many years of law-abiding behavior.

> Test results indicate an extremely low propensity for recidivism and an extremely high support system and lack of negative influence which makes his recidivism risk even lower. Furthermore, his major life change of marrying and having children subsequent to his offense also reduces the risk of engaging in further criminal activity. He understands that only his poor judgment placed him in he position that he was in. He was not compulsively driven to engage in this behavior. All test results and risk assessment suggest that he can and will control his behavior and possess an extremely low risk to reoffend.

(Dr. Haber's full report and psychological evaluation will be filed separately under seal.)

As Dr. Haber explains, a look into Lou's entire life leads to the conclusion that Lou's one-time passive investment in the offense here was aberrational. By all accounts, this was a single criminal occurrence of limited duration that was a deviation from Lou's otherwise law-abiding life.

The Eleventh Circuit has recognized that this Court has the discretion to consider aberrant behavior under the 3553(a) factors. *United States v. deVegter*, 260 Fed.Appx. 240 (11th Cir. 2008) (affirming a more than 50% downward variance where the defendant's fraudulent conduct was an aberration); *United States v. Tom*, 327 Fed.App'x. 93, 97 (10th Cir. 2009) (affirming 70 month sentence, a downward variance from 168-210 guidelines range in a 2nd degree murder of a newborn infant where the conduct of the defendant was aberrational; recognizing that where the court could not depart, the court had a freer hand to consider aberrant behavior as part of the 3553 factors); *United States v. Madden*, 515 F.3d

601 (6th Cir. 2008) (recognizing that aberrant behavior may justify a downward variance); *U.S. v. Myers,* 353 F.Supp.2d 1026 (S.D. Iowa 2005) (departure from 20 months to CTS and probation where defendant with no record and lead a blameless life convicted of possession of a short barreled shotgun sold to his cousin four years earlier, because of aberrant conduct and the other purposes of sentencing satisfied).

Coupled with Lou's post-offense, pre-indictment rehabilitation and the fact that the offense occurred eight years ago, this Court should consider Lou's involvement in this offense aberrant and worthy of consideration when weighing the 3553 factors.

- **Mr. Pargiolas's strong history of employment and his current employment.**

Lou is gainfully employed and has a history of strong employment. Since his arrest, Lou has been working with Eventus Investment Partners, a private options find, where he is the managing options trader.  His employer, Dr. Glen R. Caddy, feels that Lou is an irreplaceable asset to the firm.  Dr. Caddy has also stated that Lou will always have a job waiting for him at Eventus. Dr. Caddy will explain further about Lou's employment if he is permitted to address this Court at sentencing. *See, e.g., United States v. Tomko*, 562 F.3d 558 (3d Cir. 2009) (variance from 12-18 months to home confinement where defendant's absence impact on company); *United States v. Ruff,* 535 F.3d 999 (9th Cir. 2008) ( variance from 30-37 months to one day jail to allow him to continue working).

Lou is a productive member of society with a specialized skill. He can continue to work and if given the chance, will continue to be a productive law abiding member of the community.

## OBJECTIONS

We object to page 35, ¶122 of the PSI which states that Mr. Pargiolas has not provided copies of all of his assets and liabilities, making it unclear whether the defendant can afford a fine. At the PSI interview, counsel was given the financial paperwork to fill out and submit at a later date. Rather than filling out the exact form, counsel typed a more organized, clear and detailed list of assets and liabilities representing Mr. Pargiolas's net worth statement. In addition, Mr. Pargiolas provided the following supporting documentation:

- ✓ Three months of bank statements for his personal bank account
- ✓ Three months of bank statements for his wife's personal checking and savings accounts
- ✓ A copy of his current lease/rental agreement showing his monthly rent due
- ✓ A copy of his daughter's tuition statement
- ✓ A copy of the billing statement from Toyota for his wife's minivan
- ✓ A copy of the registration for the Toyota minivan in Louis Pargiolas's name
- ✓ A copy of Mr. Pargiolas's Chacago Options Exchange Credentials
- ✓ A copy of his 2006, 2007, 2008, 2009 income tax returns
- ✓ Notice of Sale and Foreclosure Summons for his Chicago Property
- ✓ The deed, various Cook County public records, full appraisal report and notice of foreclosure for the Chicago property
- ✓ A copy of his life insurance statement
- ✓ A detailed list of credit card liabilities and the account umbers with balance owed
- ✓ A list of investors in the various development projects of which he was involved

- ✓ A copy of the operating agreement for El Retiro
- ✓ A copy of the assessment statement for his time share
- ✓ A copy of the tax assessment/default notices for the time share

These records along with Mr. Pargiolas's credit report are more than clear than Mr. Pargiolas has an enormous amount of debt and no way to pay it. He has no substantial assets and has a wife and two children to support. Therefore, a Mr. Pargiolas does not have the ability to pay a fine.

## Conclusion

In this case, an alternate sentence, i.e., a sentence involving home confinement so that Lou can continue to work and support his family, is sufficient but not greater than necessary to meet the aims of punishment for Louis Pargiolas. This Court has the power and discretion to fashion a sentence that better serves this community and this defendant.

    Respectfully submitted,

    MARKUS & MARKUS, PLLC
    PENTHOUSE ONE
    40 N.W. THIRD STREET
    MIAMI, FLORIDA 33128
    TEL: (305)379-6667
    FAX: (305)379-6668
    www.markuslaw.com

    By:   /s/ David Oscar Markus
           DAVID OSCAR MARKUS
           Florida Bar Number 119318
           Dmarkus@MarkusLaw.com

/s/ Robin Ellen Kaplan
ROBIN ELLEN KAPLAN
Florida Bar Number 773751
Rkaplan@MarkusLaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was e-filed this 19th day of January 2011, and served on all appropriate parties through that system.

s/ Robin Ellen Kaplan
ROBIN ELLEN KAPLAN